FILED & JUDGMENT ENTERED
Steven T. Salata

Jun 05 2014

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 13-30843 |
| LAMETSHA B. CRAWFORD ) | Chapter 7 |
| ) | |
| Debtor. ) | |
| _____) | |

### ORDER

This matter is before this Court upon the Trustee's Objections To Exemptions And Valuations Claimed By Debtor filed October 3, 2013. After several continuances in order to conduct discovery, an evidentiary hearing was held on April 28, 2014. The Chapter 7 Trustee, John W. Taylor represented himself ("Trustee"). Debtor Lametsha B. Crawford ("Crawford") was represented by Barbara L. White.

The dispute involves an effort by Crawford, a Charlotte, NC resident, to claim a North Carolina residential exemption under NCGS §1C-1601(a)(1), not in her principal residence, but in a second home located in Rock

1

Hill, S.C. That home was once occupied by Crawford's great uncle, David Jennings. Crawford argues that Jennings is her legal dependent making the property eligible for exemption.

The Trustee disagrees. He argues that Jennings is not Crawford's legal dependent within the meaning of the statute. Then, anticipating Crawford might alternatively contend that Jennings was the equitable owner of the property at the petition date, the Trustee asserts three additional objections.  First, he objects to Crawford exempting property belonging to a third party.  Second, he believes that his bona fide purchaser rights under 11 USC §541(d) would trump any such equitable interest.  Third, because Jennings died shortly after bankruptcy and his will left this residence to Crawford, the Trustee asserts that any interests of Jennings in this property passed to Crawford's bankruptcy estate per 11 USC §541(a)(5)(A).

**Held**: Upon the facts presented, Jennings was not Crawford's "dependent" at the filing date within the meaning of NCGS §1C-1601(a)(1). While the Rock Hill residence is not subject to exemption under this subpart, Crawford will be permitted to amend her exemptions to claim a 'wildcard' interest in the same under NCGS §1C-1601(a)(2).

2

**STATEMENT OF FACTS**

Crawford filed a Chapter 7 bankruptcy case in this Court on April 21, 2013. As of the filing date, Crawford resided at 10965 Princeton Village Dr., Charlotte, NC. Petition, ECF No. 1.

In her bankruptcy schedules, Crawford disclosed ownership of several real estate properties, including a home located at 215 McFadden St., Rock Hill, S.C. (the "Rock Hill residence"). Crawford further described the Rock Hill residence as a "Rental" and stated that it was "Held for David Jennings." She valued this property at $48,000 and indicated that it was subject to a mortgage of $20,962.

David Jennings ("Jennings"), now deceased, was the brother of Crawford's grandmother, i.e., her great uncle. Jennings purchased the Rock Hill residence sometime between 2002 and 2004. He resided in the property until the month in which Crawford filed bankruptcy, and perhaps a month or two thereafter.

While Jennings has his own children, he and Crawford were always close.  As a child, Crawford often spent the night in Jennings' home.  He taught her to drive. Crawford says Jennings treated her as if she were a daughter; for her part, she treated Jennings as if he were an uncle.

3

This close relationship continued long after Crawford became an adult. Given his lack of local relatives, as Jennings aged and developed health problems in the 1990's, Crawford came to care for him. She took him to medical appointments, arranged for repairs to his house, and helped him ensure that he paid his bills.

Regarding the latter, Jennings received both Social Security and Veterans Administration retirement benefits, and had sufficient income to support himself.  Ex. 1, Interrog. Answer, #6.

However, at some point, family members realized that Jennings was neglecting to pay certain bills. Upon investigation, the family learned that Jennings had begun to give his money away to younger women who, according Jennings' sister Azalea, were "hanging around the house." This left him short.

When Jennings depleted his monthly income in this manner, Crawford testified that she would pay bill(s) for him.  While she provided a couple of examples, how often Crawford did this is not clear. Nor does the record indicate how much she paid on Jennings' account. However, it appears that this was an occasional, rather than a routine, practice by Crawford.  In any event it was short lived.

4

With Jennings' prudence, and perhaps his mental faculties[1] slipping, on March 7, 2007, Jennings gave Crawford his Power of Attorney. This permitted her to handle all matters relating to the Rock Hill residence. This power included the ability to maintain, lease, finance, and even sell the property. At the same time, Jennings executed a will which provided that the Rock Hill residence would go to Crawford upon Jennings' death.

At this point, Crawford began to handle Jennings' money, the payment of his bills, and the upkeep of the Rock Hill residence.

Ten months later, on January 30, 2008, Jennings deeded the Rock Hill residence to Crawford. The reasons behind his conveyance were not adequately explained. While Crawford said the purpose was to enable her to make repairs and handle "business affairs for the home," she already possessed this power under the Power of Attorney. It may have been an effort by Jennings to insure that Crawford received the home upon his death, but once again, by virtue of Jennings' will, Crawford already had this expectancy. The evidence is simply too thin to draw any conclusions.

---

[1] From what was described, it may be that Jennings was exhibiting signs of early dementia.

On one occasion after the Rock Hill residence was deeded to her, Jennings told Crawford that she could never sell his home. However, the Deed contains no such restriction. It is a Warranty deed that conveys full fee simple ownership of the property to Crawford.

After the conveyance, Jennings continued to live in the Rock Hill residence. Crawford continued to live in Charlotte, some 25 miles away from Jennings.

Crawford indicates she made mortgage payments on the Rock Hill residence in 2008 and 2010. Ex. 1, Interrog. Answer #6. Her testimony provided no details about these payments. We do not know whether the money used was hers or whether it belonged to Jennings, or how many payments were made during this period.

By 2010, Jennings' health was so poor that the family concluded that he could not live alone. A cousin moved in with him in September 2010. The cousin resided in the Rock Hill home until her death in April, 2013. During this period, the cousin paid "rent" to Jennings by making the mortgage payments on the property. Ex. 1, Interrog. Answer #10. Thus, the cousin, not Crawford, was paying Jennings' mortgage in the year preceding bankruptcy. After the cousin died, Crawford testified that she began making the mortgage

6

payments on the Rock Hill residence, but it is unclear whether this is the case.[2]

Jennings passed away on June 29, 2013, 69 days after Crawford filed bankruptcy. During this period, due to his poor health, Jennings stayed with family members, and was only intermittently in the Rock Hill home. Ex. 1, Interrog. #s 6 and 8.

## DISCUSSION

Because this fact scenario raises multiple legal issues, it is perhaps easiest to begin by noting the potential issues that are not in contention. First, both sides assume that the North Carolina residential exemption statute may be given extraterritorial effect, such that Crawford may claim an exemption in property located in another state.[3] Second, both sides appear to assume that Jennings was still a resident in the property at the filing

---

[2] This statement is contradicted by Crawford's statement in Schedule A of the Petition that "family members were paying the mortgage.

[3] There is a split in authority on whether a residential exemption can be given extraterritorial effect to claim a property in another state. *Compare In re Adams*, 375 BR 532 (Bankr. W.D. Mo. 2007) (applying Florida law) (holding that Florida's exemption could not be given extraterritorial effect) *with In re Camp*, 396 B.R 194 (Bankr. W.D. Tex 2008) (applying Florida law) (holding that Florida's exemption could be given extraterritorial effect).

7

date, even though he was only intermittently in residence after his cousin passed away sometime in April, 2013.

Finally, both sides appear to agree that Jennings owned no interest in the Rock Hill residence at the petition date. While both the Petition and Crawford's testimony hinted at such a position, Crawford's counsel was very clear at hearing: the Debtor maintains that she was the legal and equitable owner of this property at the filing date. This being so, we need not address the Trustee's alternative objections. Rather, we need only decide whether Crawford may claim an exemption in the Rock Hill residence under NCGS §1C-1601(a)(1).

**1. The North Carolina Residential Exemption.**

North Carolina has opted out of the Federal exemptions, which means that the State's exemption statute applies to resident debtors in bankruptcy. 11 U.S.C. §522(g)(1); N.C. Gen. Stat. §1C-1601(f).

N.C. Gen. Stat. §1C-1601(a)(1) provides, in relevant part, that a debtor may retain free of the claims of creditors:

> (1) The debtor's aggregate interest, not to exceed eighteen thousand five hundred dollars ($18,500) in value, in real property… that the debtor or a dependent of the debtor uses as a residence,…

8

Exemption laws are liberally construed in favor of the exemption. *Elmwood v. Elmwood*, 295 N.C. 168, 185 (1978). Although the question of whether a debtor in an opt out state qualifies for an exemption is a matter of state law, federal bankruptcy law places the burden of proof on the party objecting to the claimed exemptions. Fed. Rules Bankr. Proc. Rule 4003(c).

**2. Jennings was not Crawford's Dependent.**

NCGS §1C-1601(a)(1) does not define the term "dependent," and there is a dearth of authority on the topic. In fact, the only reported North Carolina decision construing the term appears to be this Court's decision in *In re Preston*. 428 B.R. 340 (Bankr. W.D.N.C. 2009).

Lacking a statutory definition, in *Preston*, this Court first considered the North Carolina state courts' use of the related term "dependent spouse" in domestic relations cases. *Id.* In that context, the term "dependent spouse" has been defined as one who is "actually and substantially" dependent upon another for maintenance and support or is "substantially in need of such maintenance and support" from the other. *Id.* at 343 (*quoting Vandiver v. Vandiver*, 274 S.E.2d 243, 250 (N.C. Ct. App. 1981)).

9

This Court also considered the Black's Law Dictionary definition of the term dependent: "One who relies on another for support; one not able to exist or sustain oneself without the power or aid of someone else." Black's Law Dictionary 449 (7th ed. 1999).

With these guideposts, in *Preston*, this court concluded that an estranged husband who was supporting himself, was not the Debtor's dependent for exemption purposes. *Id.* Employing these same principles, Jennings does not qualify as Crawford's "dependent" either.

The first problem with Crawford's contention is evidentiary. Crawford attempts to demonstrate Jennings' dependency by testifying that she gave him money and paid for repairs to the Rock Hill residence. However, her testimony was generally conclusory and entirely unsubstantiated. With few exceptions,[4] Crawford failed to provide any details about the sums she allegedly contributed to Jennings' support. She failed to identify the amounts contributed, the payment dates, or the reason why a payment was necessary. She provided no source documents by which to substantiate her claims.

---

[4] Response to Interrogatory No. 3 provides details about four alleged payments. The underlying documents were not presented at hearing.

10

Second, Crawford's assertions of Jennings' dependency were refuted by her own testimony. In her discovery responses, Crawford acknowledges that Jennings had income through Social Security and Veterans Administration retirement benefits. Interrog. Response 6. She admits that this income was sufficient for him to pay his bills. *Id.*

There was a point during which Jennings was not paying all of his bills, and in which Crawford appears to have paid some for him. However, these problems were not attributable to a lack of funds by which Jennings could support himself, but because he had started giving his money away:

> "The family noticed that David Jennings was not paying his obligations, **although he had sufficient income to do so**,…" *Id.* (emphasis added).

In any event, this problem was corrected long before Crawford filed bankruptcy. After 2007, Crawford handled Jennings' money and ensured that his bills were paid.

In addition to Social Security and the VA Pension, for the three years preceding her bankruptcy, Jennings also received "rent" from a cousin, in the form of her paying his mortgage payment. Id.

Because Jennings had the means for his own support, he was not "substantially in need of maintenance and

11

support" or "unable to exist or sustain [him]self" without her aid."

A third impediment to Crawford's assertion of dependency is that most of what she gave to Jennings was not financial support, but rather, care. While commendable, such familial care is not support within the meaning of the exemptions statute.

Exemptions serve to give debtors a "'fresh start'--a chance to retain enough possessions to 'begin anew.'" *In re Mahaffey*, 91 F.3d 131 (4th Cir. 1996). Similarly, the purpose of §1C-1601(a)(1) is "to secure debtors and their families the shelter of a homestead." *In re Cook*, Case No. 02-11321, at *4 (Bankr. W.D.N.C. March 4, 2003) (Hodges, J.). As these cases suggest, the idea is to help a debtor and her family keep a roof over their heads. Accordingly, dependency in the exemption context involves financial need.

This point is well made in the case of *In re Rigdon*, 133 B.R. 460 (Bankr. S.D. Ill. 1991), a case similar to the present proceeding. There, an Illinois bankruptcy court undertook to define the term 'dependency' for exemption purposes. Lacking a state statutory definition, the *Rigdon* Court canvassed state and federal law definitions of dependency arising in other legal contexts. From these, the

12

*Rigdon* court concluded that to be a "dependent" for exemption purposes, one must generally be (1) an individual, usually a relative, (2) who relies upon the **financial** support of another, and (3) in most instances, receives at least fifty percent of one's income from his supporter. *Id.* at 463 (emphasis added). Notably, that Court concluded that "dependent does not include societal support." *Id.*

Crawford's care for her great uncle is admirable. However, on this record, most of what Crawford primarily provided to Jennings appears to have been societal, not financial support.

In short, the evidence refutes Crawford's contention that Jennings was her dependent.

3. **Even if Applicable, the Residential Exemption would have Terminated Upon Jennings' Death.**

If this were not enough, one other reason prevents Crawford from claiming a residential exemption in the Rock Hill residence: Jennings passed away shortly after Crawford filed bankruptcy. At the hearing date, neither Jennings, nor Crawford resided in the property.[5]

---

[5] Both the Petition and Answer to Interrogatory No. 1 have Crawford residing at 10965 Princeton Village Dr., Charlotte, N.C. Neither has been amended to show otherwise.

13

Although a debtor's exemptions are determined at the petition date, the North Carolina residential exemption is conditional. NCGS §1C-1601(a)(1) only speaks to real property that the "debtor or a dependent of the debtor uses as a residence…."

Consequently, "[p]roperty allocated to the debtor as a residence is free from the enforcement of creditors' claims only so long as the debtor or a dependent of the debtor uses the property as a residence. Once the debtor ceases to so use the exempt property as a residence, the prohibition on the creditor's enforcement of his judgment ceases." *In re Love*, 42 B.R. 317, 318 (Bankr. E.D.N.C. 1984), aff'd 54 B.R. 947 (E.D.N.C. Oct 28, 1985); *See also In re Mahaffey*, 91 F.3d 131(4th Cir.1996).

Even if Jennings could be said to be Crawford's dependent at the filing date, his death shortly thereafter terminated the exemption. She is not entitled to a residential exemption given this change in events.

**IT IS THEREFORE ORDERED**:

1. The Trustee's Objections to Exemptions are **SUSTAINED**.

2. Crawford is **DENIED** the residential exemption, N.C. Gen. Stat. § 1C-1601(a)(1), in the South Carolina

14

residence, but may amend to claim the available balance of her § 1C-1601(a)(2) "wildcard" exemption.

**This Order has been signed electronically. The judge's signature and court's seal appear at the top of the Order.**     **United States Bankruptcy Court**